## Kahle *versus* Sneed.

1. Kahle and Sneed agreed to build boats in partnership, each to furnish one-half the capital, and Kahle to superintend the building—when finished to be delivered to Sneed for sale, one-half the profits to be paid over to Kahle. The boats being finished, and in possession of Kahle, *held*, that the payment of one-half the capital by Sneed was not a condition precedent to his recovering the boats in replevin.

2. Kahle and Sneed being partners, it was only by virtue of the express contract for delivery that Sneed could maintain replevin.

November 5th 1868.   Before THOMPSON, C. J., AGNEW, SHARS-WOOD and WILLIAMS, JJ.   READ, J., absent.

Error to the District Court of *Allegheny county:* No. 122, to October and November Term 1868.

This was an action of replevin, by John B. Sneed against F. P. Kahle, for three flat-bottomed boats; commenced December 19th 1863.

On the trial, before Williams, J., the plaintiff gave in evidence an agreement between himself and the defendant, dated June 12th 1863, by which they agreed "to build, in copartnership, six flat-boats, * * to be constructed on the Clarion river, &c. * *

"And it is agreed that each of said parties shall furnish, as required, one-half of the capital and money necessary to build and finish said boats.   And the said F. P. Kahle agrees that he will devote such time and attention, as may be necessary, in going to Clarion, and attending to and superintending the procuring the materials, and building said boats, and, when finished, to cause them to be delivered to said Sneed, at Pittsburg, or Oil City, or where he may desire, and is to have therefor an allowance for one-half of his necessary expenses in travelling, &c.

"And the said J. B. Sneed covenants and agrees that he will make sale, and dispose of said boats, to the best advantage, and for the best price that he can obtain, and that he will pay over to the said Kahle the one-half of all such profit or advantage as shall accrue therefrom."

He also gave evidence of the building of three boats on the Clarion river; that Kahle employed a man to run them down the river; that the plaintiff demanded the boats from the man, who, upon being shown the agreement between the parties, delivered

[Kahle *v.* Sneed.]

them to the plaintiff. He afterwards left them in the charge of his agent, from whom the defendant took them.

The defendant gave evidence tending to show that he had furnished much more than one-half the capital necessary to build the boats.

The defendant asked the court to charge:—

1. That plaintiff and defendant being partners in the making of the boats, this action of replevin cannot be maintained.

2. That whether partners or not, the action cannot be maintained unless the jury are satisfied that Sneed complied with his contract, by furnishing one-half of all the moneys disbursed by the partnership, up to the time of issuing the replevin.

The court declined so to charge, but instructed the jury that it was not necessary for the plaintiff to show affirmatively that he had furnished one-half the capital and money necessary to build the boats as a condition precedent to his right to maintain the action; but reserved the question for the opinion of the court in banc.

The jury found for the plaintiff, with six cents damages, subject to the opinion of the court on the questions of law reserved.

The court afterwards entered judgment on the verdict.

This was assigned for error, on the removal of the case into the Supreme Court by the defendant.

*B. F. & A. G. Lucas,* for plaintiff in error.—Replevin cannot be maintained by one partner against another: Wilson *v.* Gray, 8 Watts 35. The payment of his share of capital, &c., was a condition precedent to the plaintiff's right of possession of the boats: Corbett *v.* Lewis, 3 P. F. Smith 322.

*J. Barton,* for defendant in error.

The opinion of the court was delivered, January 5th 1869, by

AGNEW, J.—Had there been no express contract for the delivery of the boats to the plaintiff this action could not be maintained. But it was a part of the agreement, that the boats should be delivered by the defendant, after they were finished, to the plaintiff, for the purpose of sale. As his security the defendant took the plaintiff's express covenant that he would sell the boats to the best advantage and for the best price he could obtain, and would pay over to the defendant the one-half of all such profit and advantage as should accrue from the sale. It is very clear, therefore, that the plaintiff was entitled to the exclusive possession of the boats to enable him to perform his covenant. The delivery was to be at any place where the plaintiff should desire to receive them. In point of fact he did demand and receive them from the person in whose custody the defendant had left them, and ran

them to the mouth of Clarion river, where he left them temporarily, to go away on business, and in the meanwhile the defendant retook them. If the account for the expenditures in the building and finishing of the boats had not been settled at the time they were finished, the defendant could have called on the plaintiff to pay up, and enforced his right by an action upon the mutual covenant that each should furnish one-half of the money as required. But, as remarked in the somewhat analogous case of *Corbett v. Lewis*, 3 P. F. Smith 330, the plaintiff's liability is to account to the defendant for the proceeds of sale; and his right to make the sale, and for this purpose to demand the possession, is as unquestionable as the terms of the agreement.

The court were right, therefore, in their instruction to the jury on this point, and the judgment must be affirmed.

Judgment affirmed.